ALLIED CORPORATION, Plaintiff,

v.

James V. FROLA, et al., Defendants and Third Party Plaintiffs,

v.

BASF WYANDOTTE CORP., et al., Third Party Defendants.

and

EXXON COMPANY, U.S.A., et al., Third Party Defendants and Fourth Party Plaintiffs,

v.

ALCAN ALUMINUM CORP., et al., Fourth Party Defendants.

Civ. A. No. 87–462.

United States District Court, D. New Jersey.

Dec. 13, 1988.

Edward N. Fitzpatrick, John A. Avery, Clapp & Eisenberg, Newark, N.J., for defendants and third-party plaintiffs Frola and Von Dohln.

Thomas J. Schwarz, Richard S. Simon, New York City, and Mitchell H. Bernstein, Michele Giusiana, Skadden, Arps, Slate, Meagher & Flom, Washington, D.C., and George W.C. McCarter, McCarter & English, Newark, N.J., for third-party defendant Becker Paribas Inc.

Karen L. Jordan, Greenberg & Prior, Princeton, N.J., for third-party defendants Waste Recovery, Inc. and Quanta Holding Corp.

John S. Favate, Bumgardner, Hardin & Ellis, P.C., Springfield, N.J., for third-party defendant Harbor Petroleum Corp.

## OPINION

WOLIN, District Judge.

Currently before the Court is a motion to dismiss the first amended third-party complaint of third-party plaintiffs James Frola and Albert Von Dohln as against three of over a score of third-party defendants: Quanta Holding Corp., Waste Recovery, Inc. and Becker Paribas Inc. Another potential third-party defendant, Quanta Resources Corp., has not been formally joined as a third-party defendant because of its bankruptcy. Quanta Resources is a wholly owned subsidiary of Quanta Holding, which is a wholly owned subsidiary of Waste Recovery, which, in turn, is a wholly owned subsidiary of Becker Paribas.

The Court will grant the motion to dismiss with respect to seven counts of the third-party complaint, with leave to replead those counts. The Court will grant the motion in part and deny it in part with respect to three other counts, without leave to replead; the Court will sua sponte apply the latter ruling to the claims against all the third-party defendants (not just the three movants).

## INTRODUCTION

The instant litigation is the most recent chapter in a long history of legal disputes over the cleanup of real property owned by third-party plaintiffs and located at One River Road (also known as 163 River Road) in Edgewater, New Jersey. On March 29, 1985, the Environmental Protection Agency (EPA) notified approximately 91 parties that it had assumed the chief responsibility for control and cleanup of the site under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601–9675. The EPA offered the notified parties an opportunity to enter into a consent order by which the parties themselves, rather than the EPA, would perform the cleanup, in exchange for an EPA covenant not to sue. Many of the parties, including plaintiff Allied Corp. and third-party defendant Becker Paribas, took the EPA up on its offer, either by undertaking to conduct the cleanup (in the case of Allied) or by contributing to a $5 million trust fund to partially reimburse Allied (in the case of Becker Paribas). Third-party plaintiffs Frola and Von Dohln did not take part in the EPA settlement. On October 16, 1985, the EPA is-

sued an order under § 106 of CERCLA, 42 U.S.C. § 9606, ordering that Frola, Von Dohln and approximately 45 other non-settling parties perform certain cleanup, sampling and maintenance activities at the site.

Frola and Von Dohln initiated a civil action in the New Jersey Superior Court on November 18, 1985 against 123 parties (including settlers and non-settlers) seeking relief on various contractual and other common law causes of action. On February 5, 1987, while that action was pending, Allied filed the instant action against Frola and Von Dohln seeking recovery of its cleanup costs under CERCLA consistent with the EPA consent order; Allied also seeks to recover the appreciation in fair market value of the property resulting from its "remediation" efforts and seeks to impose an equitable lien upon the property. As a result of the initiation of this action, the state court dismissed Frola and Von Dohln's claims without prejudice on May 15, 1987.

Frola and Von Dohln filed a third-party complaint in the instant action on April 26, 1988, which they amended on June 15, 1988. Ten of the 17 counts in the amended third-party complaint allege causes of action against Quanta Holding, Waste Recovery and Becker Paribas. Counts 7 through 12 allege various common law theories, including breach of contract, intentional and negligent misrepresentation, strict liability, gross negligence, and negligent supervision. Counts 13, 14 and 16 allege liability under the New Jersey Spill Compensation and Control Act ("Spill Act"), N.J.S.A. § 58:10–23.11 *et seq.* Count 17 seeks indemnification and contribution under the New Jersey Joint Tortfeasors Contribution Act, N.J.S.A. § 2A:53A–1 *et seq.*

The third-party complaint alleges liability on the part of Quanta Resources based directly on its activities associated with the contaminated site. With respect to Quanta Holding, Waste Recovery and Becker Paribas, the complaint seeks to impose liability based on the nature of their relationship with Quanta Resources. Specifically, the third-party complaint alleges:

11. Quanta [Resources] was a wholly owned subsidiary of Quanta Holding, a wholly owned subsidiary of Waste Recovery, a wholly owned subsidiary of Becker.

12. At all relevant times, Becker, Waste Recovery, Quanta Holding and Quanta [Resources] were a single economic enterprise, directed, controlled and dominated by Becker.

13. Becker created and used Waste Recovery, Quanta Holding and Quanta [Resources] as corporate shells in an effort to shield Becker from accountability and responsibility for [Quanta Resource's] acts or omissions at the site. Becker, Waste Recovery and Quanta Holding are responsible for [Quanta Resource's] acts and omissions at the site and the acts and omissions of its employees, agents and contractors.

14. At all relevant times, Becker so dominated Waste Recovery, Quanta Holding and Quanta [Resources], that these corporations had no separate existence but were mere instrumentalities or conduits, one for the others.

15. As a result, Becker, Quanta Holding and Waste Recovery are liable for the acts and omissions of Quanta [Resources].

First–Amended Third–Party Complaint, Count 7, ¶¶ 11–15 (incorporated by reference into all subsequent counts). Elsewhere the third-party complaint alleges:

2. Becker, Waste Recovery and Quanta Holding were in a position to be, and were, knowledgeable of [Quanta Resource's] bringing into tanks at the site and discharging on the site surface and to the site subsurface oils and chemicals and waste materials.

3. Becker, Waste Recovery and Quanta Holding dominated and controlled Quanta [Resources] and had the capacity and were in a position to control and to stop [its] bringing to the site, and discharging on the site surface and subsurface, oils and chemicals and waste materials.

4. Becker, Waste Recovery and Quanta Holding were in a position to make

decisions and to take action to prevent and abate the discharge on the site surface and subsurface of oils and chemicals and waste materials.

*Id.* Count 16, ¶¶ 2–4 (incorporated by reference into Count 17).

Third-party defendants Becker Paribas, Waste Recovery and Quanta Holding have now moved to dismiss the third-party complaint as against them.

## DISCUSSION

### I. *Standard for Judging Sufficiency of Complaint*

Third-party defendants' motion to dismiss is grounded upon Rule 12(b)(6) of the Federal Rules of Civil Procedure, which calls for dismissal of claims for failure to state a claim upon which relief can be granted. The usual counterpart to Rule 12(b)(6) is Rule 8(a), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). As the Supreme Court held in *Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80, 85–86 (1957), all a complaint need do is give a defendant "fair notice" as to the nature and grounds of a claim. "Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." *Id.* at 47–48, 78 S.Ct. at 103, 2 L.Ed.2d at 85. So, for example, the Third Circuit repelled an attack on a complaint alleging antitrust violations in *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir.1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). The court held that the complaint as a whole alleged a "combination" within the meaning of the antitrust laws, and that this allegation, combined with "a statement of the specific course of conduct alleged to be unlawful," stated a claim upon which relief could be granted. *Id.* at 445. The court held:

It is not necessary to plead evidence, nor is it necessary to plead the facts upon which the claim is based. The goals of efficient judicial administration are retarded, not advanced, when the pleadings are used as a battleground for legal skirmishes without the necessary factual development upon which to focus decision.

*Id.* at 446. Occasionally, the Third Circuit has upheld the dismissal of a complaint on the ground that the allegations were "unsupported by any substantial facts." *E.g., Carr v. Sharp*, 454 F.2d 271, 273 (3d Cir. 1971) (civil rights complaint). The lack of factual detail in such cases cannot be seen as a problem in itself, but rather as the cause of a genuine problem: failure to alert the defendant of the grounds underlying the claim. As Wright and Miller have noted, Rule 8(a)(2) does require a sufficient statement of "circumstances, occurrences, and events" underlying the cause of action so as to put a defendant on fair notice of what is claimed. C. Wright & A. Miller, Federal Practice and Procedure § 1215, at 112–13 (1969 & Supp.1987).

In contrast to the generosity of Rule 8(a)(2) are the strictures of Rule 9(b), which provides that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." *See, e.g., Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 99–100 (3d Cir.1983). Although the Third Circuit has acknowledged that an overly harsh application of Rule 9(b) before discovery would allow sophisticated defrauders to avoid liability by concealing the details of their fraud, the Circuit has nevertheless held that even a liberal construction of Rule 9(b) will not allow the survival of a complaint that is devoid of any disclosure of the facts underlying a claim of fraud.

In determining whether a complaint complies with either Rule 8(a)(2) or Rule 9(b), the Court must, of course, measure the claim against the applicable substantive law. Where, as here, a federal court is exercising ancillary jurisdiction over state law claims,[1] the applicable substantive law

---

1. *See generally* C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3523 (1984 &

is that of the state under whose law the claims are asserted. *Cf.* C. Wright & A. Miller, Federal Practice and Procedure, *supra,* § 1204 (noting that the applicable substantive law in a diversity case is that of the state in which the district court sits). In the instant case, the controlling substantive law is that of New Jersey, since all of the claims are asserted under New Jersey common law or statutes.

The sole basis of alleged liability on the part of Quanta Holding, Waste Recovery and Becker Paribas is their status as parent corporations of Quanta Resources. Frola and Von Dohln thus seek to "pierce the corporate veil" of these corporations in two different ways: under common law principles and under the Spill Act.

## II. *Common Law Piercing of the Corporate Veil*

Counts 7 through 12 and 17 of the third-party complaint seek to impose liability on the parent corporations under common law principles. Under New Jersey law, a corporate veil is not lightly pierced, but may only be pierced in cases of "fraud, injustice, or the like." *State of New Jersey, Department of Environmental Protection v. Ventron Corp.,* 94 N.J. 473, 500, 468 A.2d 150, 164 (1983); *see also Lyon v. Barrett,* 89 N.J. 294, 300, 445 A.2d 1153, 1156 (1982). Corporations are, after all, set up primarily to limit the liability of their shareholders, and this purpose should not be needlessly frustrated. *See Ventron,* 94 N.J. at 500, 468 A.2d at 164. Thus the doctrine should be reserved as a tool to prevent a separate corporation "from being used to defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law." *Id.* (citations omitted); *see also Hupp v. Accessory Distributors, Inc.,* 193 N.J.Super. 701, 712, 475 A.2d 679, 684 (App.Div.1984) (stating that some

"impropriety" is necessary to invoke the doctrine).[2]

The New Jersey Supreme Court has toyed with a more expansive application of the doctrine, whereby the corporate membrane could be punctured by a finding that the subsidiary was a "mere instrumentality" of the parent corporation, which so dominated the subsidiary that the subsidiary had no real existence of its own. *See Ventron,* 94 N.J. at 500–01, 468 A.2d at 164–65 (quoting *Mueller v. Seaboard Commercial Corp.,* 5 N.J. 28, 34–35, 73 A.2d 905, 908 (1950)). Before allowing its musings to materialize, however, the court pulled back and stated that even in an instrumentality or conduit situation, liability should only be imposed "when the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law." *Id.* 94 N.J. at 501, 468 A.2d at 164–65 (citing *Mueller,* 5 N.J. at 34–35, 73 A.2d at 908); *cf. United States v. Jon–T Chemicals, Inc.,* 768 F.2d 686, 692–93 (5th Cir.1985) (holding that "total domination and control," without more, is sufficient to pierce a veil in a tort claim, although not in a contract claim), *cert. denied,* 475 U.S. 1014, 106 S.Ct. 1194, 89 L.Ed.2d 309 (1986).

In the case at bar, Frola and Von Dohln concede that they are not seeking (at this time, at least) to pierce the corporate veil on the ground of fraud; apparently they are alleging "injustice or the like." *See* Opposition Brief, at 6 n. 3. They thus contend that their third-party complaint should be judged not by the strict standards of Rule 9(b), but rather by the liberal standards of Rule 8(a)(2).

It is not immediately obvious whether a complaint seeking to impose liability on a parent corporation for "injustice or the like" should be assessed under Rule 9(b) or under Rule 8(a)(2). On the one hand, Rule 9(b) speaks only of "fraud."[3]

Supp.1988).

**2.** An unreported opinion cited by third-party defendants seems to have mistakenly read the *Ventron* opinion as allowing a piercing of the veil only on the basis of fraud. *See Express Scale Parts, Inc. v. Process Machinery Associates,* No. 85–2619–S, 1987 U.S. Dist. LEXIS 2692, —— F.Supp. —— (D.Kan.).

**3.** Rule 9(b) also applies by its terms to averments of mistake, but no such claim or defense is at issue here.

On the other hand, the *Ventron* court, in discussing non-fraud circumstances that would allow a piercing of the veil, seems to have focused on intentional conduct that is very close to fraud, such as illegality or impropriety. *See id.* It is also important to note that every case in which a piercing of the corporate veil is sought is sui generis and must be evaluated on its own facts. *Melikian v. Corradetti*, 791 F.2d 274, 282 (3d Cir.1986); *Farkar Co. v. R.A. Hanson Disc. Ltd.*, 583 F.2d 68, 71 (2d Cir.1978). Faced with a similar situation under Illinois substantive law, the court in an unreported case assessed a piercing claim under Rule 8(a)(2), but paid particular attention to the requirement that the complaint must put the opposing party on fair notice of the nature and grounds of the claim. *See Laborers Pension Fund v. Bakke Construction Co.*, No. 87–963, 1987 U.S. Dist. LEXIS 10,509 (N.D.Ill.) [1987 WL 19818]. This Court will adopt that sensible approach.

■ Viewing the third-party complaint through the lens of Rule 8(a)(2), the Court finds all the common law counts, as well as the statutory claim for contribution and indemnification, to be deficient. As noted above, New Jersey law requires some wrongdoing on the part of a parent corporation before a corporate veil may be pierced. In the words of the *Ventron* court, *supra*, the parent must have "abused the privilege of incorporation" by engaging in fraudulent, illegal or unjust conduct. According to Wright and Miller, supporting allegations are necessary whenever the pleading "in some way casts aspersions on defendant's moral character." C. Wright & A. Miller, Federal Practice and Procedure, *supra*, § 1224, at 157. A claim that a defendant has engaged in illegality or injustice within the meaning of *Ventron* would seem to be subject to this requirement. As the *Laborers Pension Fund* court held,

> it is possible to ... pierce the corporate veil on grounds of substantial injustice, even if there is no claim of fraud. But we require an actual factual allegation—more substantial than an intangible suspicion—before we will loose the judicial process, and the expense of discovery and depositions, on the defendant.

While conceding that they have not alleged fraud, third-party plaintiffs herein, like plaintiffs in *Laborers Pension Fund*, have failed to allege illegality or injustice. The closest that the third-party complaint comes to such a claim is an allegation that "Becker created and used Waste Recovery, Quanta Holding and Quanta [Resources] as corporate shells in an effort to shield Becker from accountability and responsibility for Quanta's acts or omissions at the site." First–Amended Third–Party Complaint, Count 7, ¶ 13 (incorporated by reference into all subsequent counts). This vague accusation is insufficient to alert third-party defendants of the basis for a piercing of the corporate veil under common law principles.[4]

Accordingly, the Court will dismiss Counts 7 through 12 and 17 as against the three movants.

---

4. If the third-party complaint were assessed under Rule 9(b), it would be found even more deficient. With the exception of one hard fact in paragraph 11 of Count 7 (that the corporations are, respectively, wholly owned subsidiaries of each other), all the allegations against the three parent companies are merely conclusory. Indeed, the other allegations are nothing more than several ways of expressing the same conclusion: "single economic enterprise" (Count 7, ¶ 12); alleged effort to "shield Becker from accountability" (*Id.* ¶ 13); "mere instrumentalities" (*Id.* ¶ 14); etc. These allegations are much more bereft of factual detail than those held sufficient to support a common law piercing claim in *Melikian*, 791 F.2d at 281–82. In that case plaintiffs alleged, inter alia, commingling of assets; undercapitalization of the subsidiary and its insolvency since its creation; overlap of officers and directors; lack of any substantial business on the part of the subsidiary other than the single transaction in question; the subsidiary's lack of any business records or even a viable checking account; and the parent's payment of salary and other business expenses of the subsidiary. *Id.* at 281. The Third Circuit held that these allegations provided "sufficient supporting details to prevent one from disregarding [the claim of fraud] as merely conclusory pleading." *Id.* at 282. If it viewed the allegations against third-party defendants herein under Rule 9(b), the Court would be unable to conclude, as did the *Melikian* court, that the instant third-party complaint asserts much more than bald conclusions against Quanta Holding, Waste Recovery and Becker Paribas.

### III. *Spill Act Claims*

Counts 13, 14 and 16 seek to impose liability on third-party defendants under the New Jersey Spill Compensation and Control Act ("Spill Act"), N.J.S.A. § 58:10–23.11 *et seq.* That legislation imposes strict liability upon "[a]ny person who has discharged a hazardous substance or is in any way responsible for any hazardous substance which the [New Jersey Department of Environmental Protection] has removed or is removing pursuant to [the Spill Act]." Spill Act § 8(c), N.J.S.A. § 58:10–23.11g(c).

#### (A) *Liability of a Parent Corporation Under the Spill Act*

The New Jersey Supreme Court addressed the propriety of imposing liability on a parent corporation under the Spill Act in *Ventron, supra.* While the court found it inappropriate to pierce the corporate veil with respect to the common law claims in that case, the court nevertheless imposed liability under the Spill Act. Although noting that the phrase "in any way responsible" in § 8(c) was not defined in the statute, the court gave the phrase a liberal construction in compliance with the mandate of § 25 of the Spill Act, N.J.S.A. § 58:10–23.11x. *See* 94 N.J. at 502, 468 A.2d at 165.[5]

The *Ventron* court held that the parent corporation was "responsible" for its subsidiary's dumping based in part on the following findings: the subsidiary was wholly owned by the parent corporation; all of the directors of the subsidiary were employees of the parent; and the directors, officers and other personnel of the parent were involved in the "day-to-day operation" of

the subsidiary. *Id.*[6] In sum, the New Jersey Supreme Court held:

> Given the extended liability of the Spill Act, we conclude that the Legislature intended that the privilege of incorporation should not, under the circumstances that obtain here, become a device for avoiding statutory responsibility. A contrary result would permit corporations, merely by creating wholly-owned subsidiaries, to pollute for profit under circumstances when the Legislature intended liability to be imposed.

*Id.*

■ In the case at bar, Frola and Von Dohln have not alleged all the factors present in *Ventron.* Nevertheless, assessing the complaint under Rule 8(a)(2),[7] they have made sufficient allegations to put the third-party defendants on notice of the basis of their claim of parental liability. Frola and Von Dohln have alleged, as in *Ventron*, that Quanta Resources is a wholly owned subsidiary of Quanta Holding and that Quanta Holding is a wholly owned subsidiary of Waste Recovery, which, in turn, is a wholly owned subsidiary of Becker Paribas. Although Frola and Von Dohln's complaint does not allege overlap of directors and officers or involvement of the parent corporations' directors, officers and employees in the daily operation of Quanta Resources, facts such as these may be proven at trial.[8] Notably, the procedural posture of *Ventron* was an appeal from factual findings and conclusions of law made by a trial court after a bench trial, *see* 94 N.J. at 482–83, 468 A.2d at 154–55, whereas the issue here is the sufficiency of a complaint. As the above discussion indicates, *Ventron* requires a much lesser showing to establish liability of a parent

---

5. Section 25 of the Spill Act provides: "This act, being necessary for the general health, safety, and welfare of the people of this State, shall be liberally construed to effect its purposes." N.J.S.A. § 58:10–23.11x.

6. Another factor favoring a holding that the parent corporation in *Ventron* was responsible for the dumping was the parent's ownership of the land in question for at least part of the period at issue. *See* 94 N.J. at 502, 468 A.2d at 165. The New Jersey Supreme Court did not seem to view this single factor as crucial.

7. Since *Ventron* held that fraud or other impropriety is not a prerequisite to imposing liability under the Spill Act, Fed.R.Civ.P. 9(b) is an inappropriate standard against which to assess the sufficiency of the allegations in Counts 13, 14 and 16.

8. Frola and Von Dohln have cited many such allegations in their Opposition Brief that they intend to prove at trial. *See infra* note 13.

corporation under the Spill Act than under common law principles. Since the ultimate hurdle is lower for a Spill Act claim than for a common law claim, it follows that the threshold hurdle must be proportionally lower as well. Therefore, despite the insufficiency of the common law claims, the Spill Act claims meet the notice requirements of Rule 8(a)(2).

**(B)** *Substantive Limitations of the Spill Act*

Nevertheless, Frola and Von Dohln seek relief under the Spill Act that is unavailable to them under that Act.

■ The Spill Act does not provide a private right of action for recovery of cleanup costs and other damages. *T & E Industries, Inc. v. Safety Light Corp.*, 680 F.Supp. 696, 703 (D.N.J.1988); *Jersey City Redevelopment Authority v. PPG Industries*, 655 F.Supp. 1257, 1262–63 (D.N.J. 1987). Rather, § 8(c) of the Spill Act, N.J. S.A. § 58:10–23.11g(c), allows the New Jersey Department of Environmental Protection (DEP) to recover its cleanup costs from responsible parties, and allows the New Jersey Spill Compensation Fund (created by the Spill Act) to recover such cleanup costs for which it has reimbursed the DEP. *Jersey City Redevelopment*, 655 F.Supp. at 1263; *see, e.g., Ventron*, 94 N.J. at 481–83, 468 A.2d at 154–55 (lawsuit brought under the Spill Act by the DEP, with the Spill Compensation Fund intervening).

■ Apparently acknowledging the inadequacy of the Spill Act alone, Frola and Von Dohln seek to impose Spill Act liability on third-party defendants through the New Jersey Environmental Rights Act (ERA), N.J.S.A. § 2A:35A–1 *et seq.* Section 4(a) of the ERA, N.J.S.A. § 2A:35A–4(a), provides that "[a]ny person may maintain an action in a court of competent jurisdiction against any other person to enforce, or to restrain the violation of, any statute, regulation or ordinance which is designed to prevent or minimize pollution, impairment or destruc-

tion of the environment." Importantly, the ERA does not itself provide any substantive rights. *Superior Air Products Co. v. NL Industries, Inc.*, 216 N.J.Super. 46, 58, 522 A.2d 1025, 1032 (App.Div.1987). Rather, it confers standing upon private persons to enforce the Spill Act (and other New Jersey environmental statutes) "as an alternative to inaction by the government which retains primary prosecutorial responsibility." *Id.* Assuming they have complied with the notice requirements of the ERA,[9] Frola and Von Dohln may have a right to enforce the Spill Act through the ERA.

However, in light of the above discussion, their substantive rights under the Spill Act through the ERA cannot exceed their substantive rights under the Spill Act directly. Therefore, because Frola and Von Dohln cannot recover damages under the Spill Act directly, neither can they recover damages under the Spill Act via the ERA. Accordingly, Counts 13, 14 and 16 will be dismissed insofar as those counts seek to recover damages. Since the Court's reasoning applies with equal force to all the third-party defendants (not just the three movants), the Court will sua sponte grant a similar partial dismissal of these three counts as to all the third-party defendants in this case. Although the three counts will be allowed to survive insofar as they seek equitable remedies and attorney's fees,[10] the Court remains skeptical as to the availability of Spill Act or ERA relief at all where, as here, the federal government (through the EPA) has acted to clean up contaminated property that the New Jersey DEP has not acted on.

The logic of the ERA as an alternative to state governmental inaction would seem not to apply where the federal government has gone a long way toward cleaning up a site. This is especially so where, as here, the parties asserting the private right of action have declined to cooperate with the

---

**9.** ERA § 11, N.J.S.A. § 2A:35A–11. Frola and Von Dohln's third-party complaint alleges compliance with the notice provisions.

**10.** *See* ERA § 10(a), N.J.S.A. § 2A:35A–10(a).

EPA in its efforts under CERCLA.[11] Since these issues were not raised on the instant motion, the Court will allow the remainder of Counts 13, 14 and 16 to survive, but will be prepared to dismiss those counts if further development of the record so requires.

## IV. *Request for Leave to Replead*

In their brief in opposition to the instant motion, Frola and Von Dohln request an opportunity to amend their third-party complaint should it be dismissed for failure to state a claim against Quanta Holding, Waste Recovery and Becker Paribas. The Court will grant this request with respect to Counts 7 through 12 and 17, which it has determined to be insufficient.

■ Federal Rule of Civil Procedure 15(a) allows a party to amend a pleading upon leave of court, which "shall be freely given when justice so requires." The decision whether to allow an amendment is within this Court's discretion. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct 795, 802, 28 L.Ed.2d 77, 87 (1971); *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir.1985). When a complaint is dismissed for failure to state a claim, leave to amend should ordinarily be given in order to allow the pleader an opportunity to correct the deficiencies. *Dupree v. Hertz Corp.*, 419 F.Supp. 764, 765–66 (E.D.Pa.1976); C. Wright & A. Miller, Federal Practice and Procedure, *supra*, § 1216, at 124. The principle ground for denying leave to amend is if granting such leave would unfairly prejudice the rights of defendant or other parties. *See Zenith Radio*, 401 U.S. 330–31, 91 S.Ct. at 802, 28 L.Ed.2d at 87–88; *Auster Oil & Gas*, 764 F.2d at 391; C. Wright & A. Miller, Federal Practice and Procedure § 1484, at 420 (1971 & Supp. 1988).

Third-party defendants herein have not alleged prejudice, and for good reason; such an argument could hardly be countenanced at such an early stage in the litigation over Frola and Von Dohln's third-party complaint. *See Dupree*, 419 F.Supp. at 766.[12]

The basis of third-party defendants' opposition to allowing Frola and Von Dohln a chance to replead is an argument that such an opportunity would be futile. Indeed, it is within the Court's discretion to deny leave to replead if the amendment would be an exercise in futility in that the amended pleading would still fail to state a claim upon which relief could be granted. *See* 3 Moore's Federal Practice ¶ 15.10, at 15–16 (1987). Contrary to third-party defendants' assertions, however, it is not at all clear that allowing Frola and Von Dohln a chance to correct the deficiencies of their pleading would be a useless exercise. There is no reason to conclude that Frola and Von Dohln could not be more specific in their allegations of injustice, illegality, or the like, within the meaning of *Ventron*. Even if they change their position and choose to allege fraud as a basis for piercing the corporate veil, they would likely be successful in surviving a subsequent motion to dismiss.[13]

11. *See also Exxon Corp. v. Hunt*, 475 U.S. 355, 106 S.Ct. 1103, 89 L.Ed.2d 364 (1986) (holding that CERCLA preempts certain remedies provided by the Spill Act); *T & E Industries*, 680 F.Supp. at 703.

12. Although the principal complaint in this action was filed in early 1987 (following state court litigation tracing back to late 1985), the third-party complaint was not filed until April 26, 1988. Within two weeks of Frola and Von Dohln's June 15, 1988 amendment of the third-party complaint, Becker Paribas moved to dismiss in the form of a pre-answer motion.

13. In their opposition brief, Frola and Von Dohln have cited numerous additional allegations with which they can buttress their third-party complaint if the Court grants them leave to replead. *See* Opposition Brief, at 11–14. These allegations concern the overlap of directors and officers, loans between the various corporations, involvement by the officers and directors of some of the parent corporations in the activities of Quanta Resources and of each other, and the sharing of office space. Although the cited allegations are not necessarily enough to allow Frola and Von Dohln to prevail on the merits, they would probably be sufficient to state a claim for a common law piercing of the veil based on fraud and thus to allow third-party plaintiffs to survive a subsequent motion to dismiss. *See supra* note 4; *cf. Melikian*, 791 F.2d at 281. Of course, a separate analysis would have to be performed for each of the three parent corporations, and the Court notes that, at this stage at least, Frola and Von Dohln's allega-

It goes without saying that leave will not be granted to replead Counts 13, 14 and 16, since those counts were partially dismissed not because of pleading deficiencies, but because of limitations on substantive rights.

## CONCLUSION

For the reasons set forth herein, the motion of third-party defendants Quanta Holding, Waste Recovery and Becker Paribas will be granted as to Counts 7 through 12 and 17, with leave to replead. The motion will be granted in part and denied in part as to Counts 13, 14 and 16 with respect to all third-party defendants, without leave to replead those counts.

An appropriate order is attached.

## ORDER

For the reasons set forth in an opinion of the Court filed herewith,

It is on this 13th day of December, 1988,

ORDERED that the motion of third-party defendants Quanta Holding Corp., Waste Recovery, Inc. and Becker Paribas, Inc. to dismiss the third-party complaint as against them is hereby granted as to Counts 7 through 12 and 17; and it is further

ORDERED that third-party plaintiffs Frola and Von Dohln are hereby granted leave to replead those counts within 30 days of today's date; and it is further

ORDERED that the motion of third-party defendants Quanta Holding, Waste Recovery and Becker Paribas to dismiss the third-party complaint as against them is hereby granted in part as to Counts 13, 14 and 16, without leave to replead, to the extent that those counts seek monetary damages or recovery of cleanup costs, and denied in part, to the extent that Counts 13, 14 and 16 seek equitable remedies and attorney's fees; and it is further

ORDERED that the partial dismissal of Counts 13, 14 and 16 is hereby applied sua sponte to the claims against all the third-party defendants.

tions with respect to Becker Paribas appear weaker than those concerning Waste Recovery and Quanta Holding.