JACK LaLANNE FITNESS CENTERS, INC., et al., Plaintiffs,

v.

JIMLAR, INC., et al., Defendants.

Civ. A. No. 94–3418 (JCL).

United States District Court, D. New Jersey.

May 2, 1995.

Jeffrey J. Greenbaum, Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, Newark, NJ, for plaintiffs.

Robert E. Bartkus, Pinto, Rodgers & Kopf, Morristown, NJ, for defendants.

## OPINION

LIFLAND, District Judge.

Presently before the Court are (1) plaintiffs'[1] motion to dismiss pursuant to *Fed.*

---

1. This action comprises a number of separate lawsuits where the parties appear both as plaintiff and defendant. In order to avoid further confusion, the Court shall refer to the

R.Civ.Proc. 13(a) and (2) plaintiffs' motion pursuant to *Fed.R.Civ.Proc.* 12(b)(6) to dismiss defendants' claims against Bally Entertainment Corp. ("Bally Entertainment") and Bally's Health & Tennis Corp. ("Bally's H & T") for failure to state a claim. In the alternative, plaintiffs move for summary judgment in favor of the two Bally entities.

## BACKGROUND

Five separately filed lawsuits have been consolidated under *Jack LaLanne Fitness Centers, Inc. v. Jimlar, Inc.*, 884 F.Supp. 162 (D.N.J.1995). The controversy revolves around a series of eight leases entered into by plaintiffs Jack LaLanne Fitness Centers, Inc. ("Jack LaLanne"), Holiday Health Clubs and Fitness Centers, Inc. ("Holiday"), and Scandinavian Health Spa, Inc. ("Scandinavian") as Tenants and defendants Jimlar, Inc. ("Jimlar") and European Health Spas, Inc. ("European") as Landlords. These eight leases involve property located in four different states: New Jersey, Colorado, Ohio, and New York. All of these actions seek a determination of the parties' rights and obligations under certain provisions of the leases. The parties have stipulated that such provisions are identical in all material respects. (Stipulation and Order, p. 2.) Each of the consolidated lawsuits focuses on the ability of the defendant-Landlords to enforce a retroactive rent adjustment provision contained in all eight of the leases.

The procedural history of this case, in abbreviated form, is as follows. On July 18, 1994, the plaintiff-Tenants filed four separate lawsuits in the four jurisdictions where the properties are located, seeking declaratory judgments. All of these complaints dealt with the retroactive rent adjustment provision of the leases. On July 22, 1994, the defendant-Landlords filed a separate breach of contract action. Five of the six counts contained in this complaint stemmed from the retroactive rent adjustment controversy. The sixth count dealt with the alleged failure of the Tenants to maintain the premises. Eventually all of these lawsuits were consolidated before this Court.

parties according to the posture in which they appear in action No. 94–3418, the action under which the other lawsuits have been consolidat-

## DISCUSSION

### Fed.R.Civ.Proc. 13(a)

The Tenants now argue that the Landlords' claims contained in their July 22, 1994 complaint should be dismissed as those claims are compulsory counterclaims not raised in the Landlords' answers to Tenants' four previously-filed actions.

■ Rule 13(a) provides in relevant part: Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

A claim is a compulsory counterclaim if it bears a logical relationship to an opposing party's claim.

A counterclaim is logically related to the opposing party's claim where separate trials ... would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action.

*Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir.1961) (quoted in *Beard v. Braunstein*, 914 F.2d 434, 442, n. 13 (3d Cir.1990)). As indicated above, with the exception of the Tenants' alleged failure to maintain the premises, the claims raised in the Landlord's July 22, 1994 complaint arise from the same set of facts and legal issues involved in the Tenants' four separate complaints. Therefore, five of the Landlords' counts are compulsory counterclaims. However, the Landlords argue that even though its claims are logically related to the Tenants'

ed. For clarity's sake, the Court also refers in the discussion below to the plaintiffs as Tenants and the defendants as Landlords.

claims, the Court should not bar the claims because the actions have been consolidated. The Court agrees.

Rule 13(a) exists essentially for the convenience of the federal courts. It is designed to prevent the fragmentation of litigation, multiplicity of actions and to conserve judicial resources. *See, e.g., Great Lakes Rubber,* 286 F.2d at 633–34 ("Rule 13(a) and the doctrine of ancillary jurisdiction are designed to abolish the same evil ... piecemeal litigation in the federal courts"); *Martino v. McDonald's Sys., Inc.,* 598 F.2d 1079, 1082 (7th Cir.) *cert. denied,* 444 U.S. 966, 100 S.Ct. 455, 62 L.Ed.2d 379 (1979) ("[t]he civil procedure rule providing for compulsory counterclaims forces parties to raise certain claims at a time and place chosen by their opponents or to lose them, but the rule is the result of a balancing between competing interests; the convenience of the party with a compulsory counterclaim is sacrificed in the interest of judicial economy"); 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1409, p. 46 (2d Ed.1990 & Supp.1994) ("the reason for [Rule 13(a) ] is to enable the court to settle all related claims in one action, thereby avoiding a wasteful multiplicity of litigation on claims arising from a single transaction or occurrence"). While no court in the Third Circuit has ruled on this issue, a number of courts in other circuits have determined that consolidation obviates the concerns of Rule 13(a), thereby making dismissal inappropriate. *See, e.g., Branch v. Federal Deposit Insurance Corporation,* 825 F.Supp. 384, 401 (D.Mass.1993) (where second filed action contained compulsory counterclaims but was consolidated with first filed action, "dismissal of [second filed action] would not serve the purposes of *Fed.R.Civ.Proc.* 13(a)"); *Provident Life and Accident Ins. Co. v. United States,* 740 F.Supp. 492, 496 (E.D.Tenn.1990) (where second filed action contained compulsory counterclaims, but the first filed action had been consolidated with second action, dismissal found not to "further any of the policies behind *Fed.R.Civ.Proc.* 13(a)"). Accordingly, it appears to this Court that dismissal of the Landlords' claims would fail to serve the interest of judicial economy as that interest has been satisfied by the consolidation of these actions.

*Corporate Veil*

According to the Landlords' complaint, Bally Entertainment is the parent of Bally's H & T, which in turn owns the remaining plaintiffs, Jack LaLanne, Holiday and Scandinavian. Neither Bally Entertainment nor Bally's H & T appear to be parties to any of the leases. However, the Landlords' complaint alleges that the two Bally entities should be liable because they controlled and dominated Jack LaLanne, Holiday, and Scandinavian to the extent that the Court should "pierce the corporate veil." The complaint alleges in relevant part as follows:

> Upon information and belief, Bally Entertainment controls and operates the business of Bally's [H & T] as a single business enterprise. In particular, and upon information and belief, ... Bally Entertainment, through its directors, officers and employees, dominates, controls and otherwise operates Bally's [H & T] as its agency and instrumentality, and is therefore liable for the obligations of Bally's [H & T].

(¶ 8.) The Complaint also alleges that

> the business of Bally Entertainment, Bally's [H & T] and its subsidiaries, Jack LaLanne, Holiday and Scandinavian are controlled and operated as a single business entity and enterprise. In particular, upon information and belief, ... Bally Entertainment and Bally's [H & T], through their directors, officers and employees, dominate and control and otherwise operate its subsidiaries, Jack LaLanne, Holiday Health Spas and Scandinavian, as its agencies and instrumentalities, and is therefore liable for the obligations of Jack LaLanne, Holiday Health Clubs and Scandinavian.

(¶ 12.)

Bally Entertainment and Bally's H & T argue that they should be dismissed from this action because Landlords' have failed to state a claim on the issue of whether the corporate veil should be pierced. Plaintiffs argue that New Jersey requires (1) domination and (2) a showing of fraud or injustice before a court will pierce a corporate veil and that defendants have not pled either fraud or

injustice. Plaintiffs appear to argue, though they do not clearly state, that the Court should judge defendants' corporate veil claim on the basis of the requirements of *Fed. R.Civ.Proc.* 9(b) rather than the more lenient Rule 8(a)(2), because such corporate veil claims involve a fraud element. Defendants argue that New Jersey only requires a showing of domination and that therefore their claim should be evaluated according to the requirements of Rule 8(a)(2).

The leading corporate veil case in New Jersey is *State of New Jersey, Dept. of Environ. Protection v. Ventron*, 94 N.J. 473, 500–01, 468 A.2d 150 (1983), where the New Jersey Supreme Court held that

> Except in cases of fraud, injustice, or the like, courts will not pierce a corporate veil. The purpose of the doctrine of piercing the corporate veil is to prevent an independent corporation from being used to defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law.

> Under certain circumstances, courts may pierce the corporate veil by finding that a subsidiary was "a mere instrumentality of the parent corporation." Application of this principle depends on a finding that the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent. Even in the presence of corporate dominance, liability generally is imposed only when the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law.

■ This language arguably, though not convincingly, leaves room for a small class of cases where liability could be imposed because the domination of the subsidiary was so complete that the subsidiary could only be viewed as a "conduit" of the parent. However, the Third Circuit has clearly held that *Ventron* requires a showing of fraud or injustice before a court may disregard the corporate form:

> [The New Jersey Supreme Court] explained that the corporate veil may be pierced *only* where (1) "the parent so dominated the subsidiary that it had no sepa-

rate existence but was merely a conduit for the parent" and (2) "the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law."

*Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 149 (3d Cir.1988) (emphasis added) (quoting *Ventron*, 94 N.J. at 500–01, 468 A.2d 150). Therefore, in order to state a claim defendants must include an allegation of fraud or injustice or the like.

■ It would appear that the appropriate standard for evaluating a corporate veil claim based on fraud would be Rule 9(b). However, where the claim is based on allegations of injustice or illegality, the proper standard of evaluation would be Rule 8(a)(2). *See, e.g., Allied Corp. v. Frola*, 701 F.Supp. 1084, 1088 (D.N.J.1988) (J. Wolin) (where plaintiff's claim was not based on fraud, but rather injustice, Rule 8(a)(2), rather than Rule 9(b), was applied); *Fort Washington Resources, Inc. v. Tannen*, 153 F.R.D. 565 (E.D.Pa.1994) (applying Rule 8(a)(2) to nonfraud claims); *Laborers Pension Fund v. Bakke Construction Co.*, No. 87–963 1987 WL 19818 (N.D.Ill. Nov. 10, 1987) (applying Rule 8(a)(2) to nonfraud claims). The Court notes that even under Rule 8(a)(2), where the claim was based on injustice some courts have required relatively specific factual allegations—in effect, an intermediate standard falling somewhere between Rule 8(a)(2) and Rule 9(b). As stated in *Allied Corp.*, "supporting allegations are necessary whenever the pleading 'in some way casts aspersions on defendant's moral character.' A claim that a defendant has engaged in illegality or injustice ... would seem to be subject to this requirement." 701 F.Supp. at 1089 (citing 5 Wright & Miller, *Federal Practice and Procedure*, § 1223, at 157 (1969 & Supp.1987)). Also, in *Laborers Pension Fund*, the Court stated that

> it is possible ... to pierce the corporate veil on grounds of substantial injustice, even if there is no claim of fraud. But we require an actual factual allegation—more substantial than an intangible suspicion—before we will loose the judicial process, and the expense of discovery and depositions, on the defendant.

As noted above, defendants have simply alleged domination. Because defendants have not included even conclusory allegations as to fraud, injustice or any sort of illegality, defendants' claims could not survive scrutiny under either Rule 9(b) or 8(a)(2). Accordingly, the Court will grant plaintiffs' motion to dismiss. *See, e.g., Fort Washington,* 153 F.R.D. at 568 (dismissing corporate veil claim where defendant "fails to allege any sort of fraud or injustice necessary to state a claim for piercing the corporate veil").