William F. COYER, Sr., and America Direct, Inc. formerly Advanced Electronics, Inc. aka Advanced Electronics and Daniel V. Barus, Plaintiffs and Defendants on the Counterclaim,

v.

John W. HEMMER and Barbara B. Hemmer, Defendants, Counterclaimants and Third–Party Plaintiffs,

v.

INNOVATIVE DESIGN PRODUCTS, INC., America Direct (H.K.) Ltd., MedTech, Inc., Wilcore International, Inc. and Mrs. William F. Coyer, Sr., Third–Party Defendants.

Civ. No. 94–5116(CSF).

United States District Court,
D. New Jersey.

Sept. 20, 1995.

As Corrected Sept. 27, 1995.

Mason, Briody, Gallagher & Taylor by Philip M. Colicchio, Lee R. Lederman, Francis M. LoBosco, Princeton, NJ, for Plaintiffs, William F. Coyer, Sr., America Direct, Inc. and Daniel V. Barus, and Third–Party Defendant Mrs. William F. Coyer, Sr.

The Feinsilver Law Group by David Feinsilver, Daniel V. Sollecito, Millburn, NJ, for Defendants / Counterclaimants / Third–Party Plaintiffs, John W. Hemmer and Barbara B. Hemmer.

## OPINION

CLARKSON S. FISHER, District Judge.

This case comes before the court on the motion of plaintiffs, William F. Coyer, Sr., Daniel V. Barus and America Direct, Inc., and third-party defendant Mrs. William F. Coyer, Sr., to dismiss defendants' counterclaim and third-party complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). This case arises out of a series of business transactions and financial plans involving three corporations in which both plaintiff William F. Coyer, Sr. (hereinafter "Coyer"), and defendant John W. Hemmer (hereinafter "Hemmer") were employed and served on the board of directors. Additionally, both Coyer and Hemmer are shareholders in the three corporations. The principal allegations in defendants' counterclaim and third-party complaint allege Coyer has defrauded Hemmer of personal services and diluted the value of Hemmer's personal assets. The corporate parties are named as the artifice through which Coyer perpetrated his alleged acts. The remaining parties are named as incidental players. For ease of discussion a description will be provided.

The three principal corporations are plaintiff America Direct, Inc., formerly Advanced Electronics, Inc. (hereinafter "AEI"), third-party defendant Innovative Design Products, Inc. (hereinafter "IDP") and third-party defendant MedTech, Inc. (hereinafter "MedTech"). All three companies, AEI, IDP and MedTech, are incorporated under the laws of Delaware with their principal place of business in New Jersey. Allegedly, Coyer is chief executive officer, president and chairman of the board of directors of IDP, MedTech and AEI.

The remaining corporate parties are the third-party defendant America Direct (Hong Kong) (hereinafter "AD (Hong Kong)") and third-party defendant Wilcore International, Inc. (hereinafter "Wilcore"). AD (Hong Kong) is alleged to be a corporation existing under the laws of the British Crown Colony of Hong Kong. Wilcore is alleged to be a Delaware corporation with its principal place of business in New Jersey. Allegedly, Coyer owns 90% of the common stock of AD (Hong Kong) and is sole shareholder of Wilcore.

Defendants John W. Hemmer and Barbara B. Hemmer are residents of New York. Mrs. Barbara Hemmer is a party to the case by virtue of her owning stock jointly with her husband in IDP, AEI and MedTech. Mr. and Mrs. William F. Coyer, Sr., are residents of New Jersey. Mrs. Coyer is a party to the case by virtue of her owning stock jointly with her husband in IDP, AEI, MedTech, AD (Hong Kong) and Wilcore. Additionally, Mrs. Coyer is allegedly a "no-show" employee of IDP and AEI and an "adviser" of her husband. Plaintiff Daniel V. Barus is a resident of New Jersey. Mr. Barus (hereinafter "Barus") is the son-in-law of Coyer, vice president and general counsel of AEI, and director and stockholder of IDP. Barus is alleged to be a "controlled" director and "aider and abettor" to Coyer. Jurisdiction is premised on diversity of citizenship pursuant to 28 U.S.C. § 1332.

On October 14, 1994, plaintiffs Coyer and AEI filed suit against Hemmer and Mrs. Hemmer alleging Hemmer had wrongfully converted shares of AEI common stock. On November 1, 1994, plaintiffs Coyer, Barus and AEI filed a first amended complaint alleging Hemmer breached his fiduciary duty to AEI by failing to inform the board that the company's primary salesman, John A. Genarro, planned to leave the company and file a shareholder derivative suit.

Allegedly, Genarro was a 25% shareholder in AEI when he filed a shareholder derivative suit on or about April 22, 1994, in Superior Court of New Jersey, Chancery Division, Union County. Genarro brought suit against Coyer, AEI, AD (Hong Kong) and Barus alleging breach of fiduciary duty by Coyer and Barus. Exhibit M to Plaintiffs' First Amended Complaint. Many of the allegations contained in the Genarro litigation are alleged to be contained in count seven of defendants' counterclaim and third-party complaint. According to the plaintiffs, the Genarro litigation was settled by the board of AEI, Coyer, Barus and AD (Hong Kong) on June 21, 1994, without an admission of liability. Plaintiffs' First Amended Complaint, ¶ 121. Plaintiffs allege that at the time of the settlement Hemmer remained on the board of directors of AEI and voted to approve a settlement of the claims with Genarro. It is alleged Hemmer breached his duty of loyalty to the company by consulting with both Genarro and Genarro's attorneys prior to the settlement. According to plaintiffs, Hemmer was consulted by Genarro and his counsel prior to the filing of the Genarro lawsuit and was invited to participate as a plaintiff. It is also alleged Hemmer breached his duty of loyalty to AEI in failing to disclose this information to the remaining directors of AEI and then approving the settlement of those claims as a director of AEI.

Plaintiffs also allege that fifty shares of stock in AEI were transferred to Mr. Hemmer and Mrs. Hemmer for insufficient consideration. Plaintiffs seek damages and a declaratory judgment that Mr. and Mrs. Hemmer are not shareholders of Advanced Electronics, Inc. or, alternatively, Mr. and Mrs. Hemmer, as shareholders, are barred from bringing a shareholder derivative suit.

On February 27, 1995, defendants John W. Hemmer and Barbara B. Hemmer filed an answer, counterclaim, third-party complaint and jury demand. The answer denied the allegations of breach of fiduciary duty and receipt of stock for insufficient consideration. The counterclaim and third-party complaint asserted claims on behalf of the defendants for breach of employment contract and for breach of fiduciary duty.

According to the allegations contained in the counterclaim and third-party complaint, the business relationships involved in this suit began in 1989 and continued until 1994. During this period Hemmer was employed by IDP, MedTech and AEI as an officer, and served on the board of directors for all three companies. Allegedly, during most of this time, Hemmer was Coyer's senior assistant, and for the early period, the only other "officer" level employee. The following is a summary of the allegations contained in the counterclaim and third-party complaint. For purposes of this motion, the court shall accept these allegations as true. References, unless otherwise noted, refer to one of the ten counts contained in the counterclaim and third-party complaint. For ease of discussion, the court shall address the allegations related to each corporation individually.

*IDP*

Counts one and two discuss Hemmer's employment by IDP and his claims of breach of fiduciary duty by Coyer as director of IDP. Count one alleges that in 1989 Hemmer was approached and requested by Coyer and the "board" of IDP to accept employment with IDP. In February of 1989 he commenced employment with IDP. In May of 1989 he was appointed to the position of executive vice president, chief financial officer and director. A three-year contract at a salary of $60,000 per year was executed. Additionally, Hemmer purchased 20,000 shares of common stock of IDP.

Hemmer worked in the capacity of chief financial officer until October of 1990, when he was replaced by Kevin Leibold. He continued working for IDP as an executive vice president until June of 1991. He was never paid for these services. In 1991 Hemmer was "required" to submit his resignation from IDP in his capacity as executive vice president and director in exchange for a settlement of accrued back salary in the amount of $75,000. Count one seeks damages against all plaintiffs and third-party defendants for breach of employment contract.

Count two alleges a breach of fiduciary duty by Coyer as director of IDP. Count

two is a shareholder derivative suit. According to Hemmer, IDP imported merchandise from Coyer's company AD (Hong Kong). Allegedly, Coyer was "surreptitiously marking-up inventory in the Orient which was purchased by IDP and making a personal profit on the merchandise." Count two, ¶ 30. The result was a diversion of income from IDP shareholders to Coyer as 90% shareholder of AD (Hong Kong). Additionally, it is alleged Coyer has transferred three IDP products to nonrelated companies with royalties paid to Coyer or one of his related companies. Count two seeks appointment of a receiver, an accounting of the assets of IDP, recovery of the proportional share of assets due IDP and punitive damages. Count two is brought against all parties. Hemmer asserts that no demand was made upon the board of directors of IDP to take action against Coyer because "Coyer controlled a majority of the stock of IDP, and/or controlled the Board of Directors, and therefore such a demand would have been futile." Count Two, ¶ 35.

*MedTech*

Counts three, four and five address Hemmer's allegations regarding MedTech. MedTech was a company whose sole asset is allegedly a license for a "herpes device." Count three is brought as a direct action for breach of employment contract. Count four is brought as a derivative shareholder suit and seeks appointment of a receiver, an accounting of the assets of MedTech, payment to defendants of their proportional share of the assets of MedTech and punitive damages. Count five is a claim for tortious interference with a business opportunity. All three counts seek damages from all plaintiffs and third-party defendants.

Allegedly, Hemmer was hired by MedTech in March of 1992 to serve as vice president, chief financial officer and director. As compensation, he was provided 3% of the total issued and outstanding shares of MedTech. Additionally, a formal three-year contract at a salary of $100,000 per year was executed in January 1993; however, to date Hemmer has never been compensated for those services. No facts are provided as to when this employment terminated, if ever. Additionally,

there is no allegation that Hemmer ever resigned or was removed from his position as director.

Allegedly, a merger was proposed with an investor who would provide the shareholders of MedTech a 20% interest in a "blind pool" in exchange for the outstanding shares of MedTech. Allegedly the 20% interest in the blind pool was worth one million dollars to MedTech and was, in effect, a "finder fee" for the acquisition of an unproven and untested "herpes device." Coyer, acting out of self-interest, requested he be individually compensated for accrued back salary and other compensation in the amount of $300,-000 for services rendered to MedTech. The investor refused the request and the deal was terminated. Hemmer argues no demand for action was made upon the MedTech board of directors because "Coyer controlled a majority of the stock of MedTech, and/or controlled the Board of Directors, and therefore such demand would have been futile." Count Four, ¶ 43.

Count five alleges "tortious interference with a business opportunity." Allegedly, Hemmer was offered the future position of vice president of finance and administration at the newly merged company. He was to be compensated at a salary of $100,000 per year. Additionally, Hemmer was to be offered a "large stock option" prior to a "planned public offering" in the newly merged company. Count four, ¶ 45. According to the counterclaim, Coyer's previously described request for accrued back salary and other compensation terminated the deal and interfered with Hemmer's business opportunity. Hemmer demands compensatory and punitive damages and attorney's fees against all plaintiffs and third-party defendants.

*Advanced Electronics, Inc. (AEI)*

Counts six and seven address Hemmer's claims regarding AEI for breach of employment contract and breach of fiduciary duty. Allegedly, after Coyer "killed" the MedTech merger, he told Hemmer that his MedTech employment contract would be assumed by AEI and would commence in March of 1993 at the rate of $100,000 per year. Allegedly Hemmer served as executive vice president and chief financial officer of AEI from Janu-

ary of 1993 until August of 1993 without a written contract. In August of 1993, Hemmer was "falsely induced" to sign a two-year contract that called for payment at the rate of $50,000 per year. For the period of August 1993 to May 1994, Hemmer's salary under the AEI contract was paid. Allegedly this was the only compensation Hemmer received during the four years of service he provided as an employee, director and officer of the previously discussed companies. In May of 1994, Coyer requested that Hemmer reduce his salary to $25,000 per year; however, Hemmer refused. In "August of 1994," it is alleged Hemmer was terminated by AEI. This was done "without just cause based on the cynical claim of unavailability of funds by said CEO . . . ." Count six, ¶ 55. Count six seeks damages for breach of contract, interest and attorneys fees against all named plaintiffs and third-party defendants.

Count seven is a shareholder derivative suit alleging breach of fiduciary duty by Coyer as a director of AEI. The count is broken into eight subcategories, all alleging separate claims of fiduciary duty on the part of Coyer and Barus. For discussion purposes, each subcategory will be addressed separately.

In subcategory A of count seven, Hemmer accuses Coyer of breaching his fiduciary duty to AEI in a transaction similar to those alleged in count two. According to Hemmer, AEI markets a "Jet Aire" product which is manufactured in Hong Kong. Allegedly, AD (Hong Kong) acts as AEI's purchasing agent in Hong Kong. The role of AD (Hong Kong) in the transaction is to arrange letters of credit financing and shipping. For such services, AD (Hong Kong) is entitled to a 5% commission on the purchase price of each Jet Aire unit. Allegedly, AD (Hong Kong) was increasing the purchase price of each unit by $2.00. According to Hemmer, this fact was intentionally and wrongfully concealed by AD (Hong Kong) and Coyer. The net result is allegedly a misappropriation of 1.2 million dollars in revenue.

In subcategory B of count seven, Hemmer claims Coyer breached his fiduciary duty to AEI in October of 1993 by diverting the sale of 35,500 units of the Jet Aire product. According to Hemmer, the units were sold directly to J.C. Penney and Venture stores through AD (Hong Kong). The result of this transaction was the diversion of profits from AEI to AD (Hong Kong).

In subcategory C of count seven, Hemmer alleges Coyer breached his fiduciary duty to the AEI stockholders by attempting to form a public company and dilute stockholder interest. According to the allegations, Wilcore was a holding corporation with no assets, formed for the purpose of acquiring Med-Tech and AEI. It was contemplated that an initial offering of 200,000 shares and $1 million in proceeds would be followed by a public offering for "up to" $10 million in common stock. According to Hemmer, based on his percentage ownership of AEI and MedTech, he should have been a 5% shareholder in Wilcore. He contends, however, that Coyer wrongfully attempted to dilute his share to 3.4% by issuing stock to individuals with no connection to AEI, such "as personal friends, family members and unrelated creditors." Count seven, ¶ 82. According to Hemmer, this attempt to dilute his interest was a breach of fiduciary duty and "yet another wrongful artifice and device employed by Coyer in his continuing efforts to dilute and convert the value of Hemmer's investment and ownership interest in AEI to Coyer's substantial financial benefit." Count seven, ¶ 84.

Subcategory D of count seven alleges a breach of fiduciary duty by Coyer for his conduct in attempting to divert and transfer products of AEI to other companies. According to Hemmer, AEI in 1992 entered into an exclusive nontransferable licensing agreement with the inventors of the "ultrasonic toothbrush." Count seven, ¶ 86. This product is an "apparatus for dental and hygiene care." Count seven, ¶ 87. Allegedly, Coyer and Barus have attempted "to market and sell the ultrasonic toothbrush through AD instead of AEI." Count seven, ¶ 90. According to Hemmer, it is anticipated this product would generate gross sales in excess of $30 million dollars over a three- to five-year period. Hemmer further alleges that Coyer has attempted to charge AEI "false and improperly alleged fees for tooling, development of the product and other expenses

and charges relating to the ultrasonic toothbrush." Count seven, ¶ 95.

Subcategory D of count seven also alleges AEI holds a proprietary interest "in a product known as a hand-held finger hair dryer." According to Hemmer, AEI planned to market this product under the Jet Aire trademark. It is alleged that Coyer has sought to market and sell this product, like the "ultrasonic toothbrush," through AD (Hong Kong), rather than AEI. According to the allegation, Coyer is seeking to divert "substantial profits in the millions of dollars to AD." Count seven, ¶ 49.

Subcategory E of count seven alleges Coyer breached his fiduciary duty to the shareholders of AEI by directing AEI in December of 1993 to pay him $165,000 in "alleged accrued salary for 1992" and $11,500 in "alleged interest." Count seven, ¶¶ 100, 101. According to Hemmer, this compensation violated AEI's by-laws, which prohibit a director from having a vote in the amount of compensation paid to a director. Hemmer further alleges that Coyer wrongfully took from AEI a salary increase in 1993 from $125,000 to $181,500 and again in 1994 from $181,500 to $199,650. According to Hemmer, he was not offered a corresponding salary increase. Additionally, it is claimed that Coyer wrongfully had AEI increase his bonus from 5% to 8% for 1993.

Subcategory F of count seven alleges Coyer has wrongfully hired various family members, including his wife, daughter and son-in-law, as employees of AEI. According to the allegations, Mrs. Coyer was hired to perform public relations for $1,300 per month; however, to date she has not performed any such services. Additionally Coyer hired his son-in-law, Barus, as general counsel and "COO" at a salary of $100,000 per year even though Barus "has no hands-on experience in the personal hair care appliance industry." Count seven, ¶ 107. Additionally, Coyer has wasted corporate assets by wrongfully causing AEI to purchase a "key man" insurance policy for Barus. Hemmer further alleges Coyer has delegated "many of his duties" to Barus, thereby allowing himself more time to promote AD (Hong Kong). Finally, it is alleged Coyer caused AEI to hire his daughter, Theresa, though she failed to perform any services for the company.

Finally, Subcategory G of count seven alleges Coyer has breached his fiduciary duty to AEI by converting company assets for his own use. No specific factual allegations are made. According to the allegations, Coyer has invested these "misappropriated funds" in two condominiums in Nantucket, a condominium in the Cayman islands, a 1989 Mercedes, and a stock portfolio. These misappropriated funds, it is alleged, are the product of Coyer's wilful acts of oppression.

Count seven concludes as to all subcategories:

> No demand for action was made upon the Board of Directors of AEI, because [C]oyer controlled a majority of the stock of AEI, and/or controlled the Board of Directors, and therefore such a demand would have been futile.

Count seven, ¶ 131.

Count seven demands judgment against all named plaintiffs and third-party defendants for an accounting of the assets of AEI, the appointment of a receiver, the payment to "plaintiff" of his proportional share of the assets, punitive damages, and such other relief as the court deems appropriate.

*The Remaining Claims*

The remaining three counts involve claims applicable to all, or one or more, of the previously alleged facts. Count eight is a claim for "Violations of Federal New Jersey Securities Laws." Count eight alleges:

> In an effort to cause the Hemmers to invest their monies in said corporations, and to cause Hemmer to continue his employment, the plaintiffs transmitted to the defendants various false, misleading and untrue statements, inclusive of material omissions, in person and through the United States mail. . . .

Count eight, ¶ 136.

The count concludes that as a result of these acts, deeds and omissions, the defendants were caused to suffer "great and serious financial and economic loss, damage and injury thereby." Count eight, ¶ 141. Defendants seek to return their stock in exchange

for all statutory remedies, as well as damages for breach of contract, fiduciary duty, negligence, fraud, prejudgment interest, counsel fees and costs of suit.

Count nine is a claim for "economic duress." It is alleged "Coyer repeatedly used Hemmer's circumstances of economic distress to compel Hemmer to work without payment of his salary or at partial payment of his salary." Count nine, ¶ 145. It is alleged that plaintiff has brought suit against defendant "for the obvious purpose of coercing Hemmer into compromising Hemmer's valid claims for a fraction of the true value thereof." Count nine, ¶ 152. Defendants demand damages against "all defendants" for compensatory and punitive damages.

Finally, count ten of defendants' counterclaim and third-party complaint alleges a claim for "Federal and New Jersey 'RICO' Violations." The claim alleges a common scheme and conspiracy among all named plaintiffs and third-party defendants to operate AD and AEI for the purpose of "stealing and/or misappropriating the assets, property, merchandise, business opportunities and funds of IDP, MedTech, AEI and of the stockholders of each and all of them" in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.A. § 1961 (West 1984), and N.J.Stat.Ann. § 2C:41–2 (West 1982). Defendants seek compensatory and punitive damages pursuant to 18 U.S.C.A. § 1964 (West 1984) and N.J.Stat.Ann. § 2C:41–4 (West 1982).

The case now comes before the court on the motion of plaintiffs, Coyer, Barus and AEI, and third-party defendant Mrs. William F. Coyer, Sr., to dismiss the counterclaim and third-party complaint pursuant to Rule 12(b)(6). No appearance has been entered on the record by third-party defendants IDP, AD (Hong Kong), MedTech or Wilcore. For purposes of this motion, references to plaintiffs shall include, unless otherwise noted, third-party defendant Mrs. William F. Coyer, Sr.

Plaintiffs' motion seeks to dismiss defendants' counterclaim in its entirety as to plaintiffs Coyer and Barus. Plaintiffs' motion also seeks to dismiss the first through fifth and seventh through tenth counts of defendants' counterclaim as to plaintiff AEI. Finally, plaintiffs' motion seeks to dismiss defendants' third-party complaint in its entirety against Mrs. William F. Coyer, Sr.

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) tests the sufficiency of the allegations contained in the complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). The critical inquiry involved in testing the sufficiency of the complaint is whether, taking the well-pleaded allegations of the complaint as true, and viewing them liberally, it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 444 (3d Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). A decision to dismiss the case must be based on the ground that the facts alleged in the complaint, even if true, fail to support the plaintiff's complaint. *See, Ransom v. Marrazzo,* 848 F.2d 398 (3d Cir.1988). For ease of discussion the court shall address defendants' claims for breach of employment contracts and defendants' shareholder derivative claims together when appropriate. The court's review is limited to examining the allegations contained in defendants' counterclaim and third-party complaint. Fed.R.Civ.P. 12(b)(6).

*Choice Of Law*

As an initial matter, this court must determine whether Delaware or New Jersey law is applicable to the questions at issue. A federal district court sitting in diversity must apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). New Jersey conflicts-of-law questions are resolved under the "interest analysis" standard, which weighs the interests and contacts of the states involved. *In re ORFA Securities Litigation,* 654 F.Supp. 1449 (D.N.J.1987). The New Jersey rules require the application of the law of the state with the most significant contacts to the dispute. *Id.*

In this case, it is not disputed that IDP, MedTech and AEI are Delaware corporations with their principal place of business located presently or formerly in New Jersey.

Additionally, it is not disputed that Mr. and Mrs. Coyer and Barus are residents of New Jersey. Additionally it is alleged by both parties that many of the transactions at issue occurred in New Jersey. Finally, the only reference to Delaware is the stipulation that IDP, MedTech and AEI are all incorporated under the laws of Delaware. Under the above noted conflict rules, it is clear that New Jersey law applies to defendants' claims alleging breach of employment contract contained in counts one, three and six. Additionally, it is clear New Jersey law governs counts five and nine, which allege "tortious interference with a business opportunity" and "economic duress." Finally, to the extent counts eight and ten allege violation of New Jersey securities laws and RICO violations, New Jersey law will be applied.

■ The court declines to follow New Jersey rules, however, as to counts two, four and seven to the extent that the court is asked to determine the adequacy of compliance with the demand requirement of Rule 23.1 of the Federal Rules of Civil Procedure. The rule provides:

> The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort. . . .

Fed.R.Civ.P. 23.1.

Rule 23.1 does not create any federal substantive demand requirements on its own. "On its face, Rule 23.1 speaks only to the adequacy of the shareholder representative's pleadings." *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 96, 111 S.Ct. 1711, 1716, 114 L.Ed.2d 152 (1991). The substantive requirements of demand are a matter of state law. *Id.* at 97–99, 111 S.Ct. at 1717–18. Those matters require an examination of the internal affairs of a corporation and are governed by the law of the state of incorporation. *Draper v. Paul N. Gardner Defined Plan Trust*, 625 A.2d 859, 865 (Del.1993); *Starrels v. First Nat'l Bank of Chicago*, 870 F.2d 1168, 1170 (7th Cir.1989) (holding law of state of incorporation governed demand futil-

ity analysis); *Abrams v. Koether*, 766 F.Supp. 237, 249 (D.N.J.1991) ("In diversity cases, the relevant substantive law is the law of the state of incorporation."). This court will therefore analyze defendants' derivative shareholder claims to determine whether demand on the board is excused pursuant to Delaware law.

*Breach of Employment Contract*

Counts one, three and six allege breach of employment contract, as discussed above. According to the allegations, Hemmer had oral and written employment contracts with IDP, MedTech and AEI for the 1989 to 1994 time period. According to the allegations, Hemmer is owed significant amounts of accrued salary and interest for his services. Accepting these allegations as true, the court finds Hemmer has set forth with sufficient facts a cause of action for breach of contract against IDP in count one, MedTech in count three and AEI in count six to survive a Rule 12(b)(6) motion. The court makes no judgment on the merits of these claims.

The more difficult question presented to the court is whether Hemmer has set forth sufficient facts in each count to state a cause of action for piercing the corporate veil against the moving parties. This issue at this time is not whether the corporate veil may be pierced, but, rather, whether defendants have pled facts which, if true, set forth a cause of action for piercing the corporate veil. Plaintiffs argue that the allegations against the moving parties should be dismissed because defendant has failed to plead with relative factual specificity fraud or injustice. *Jack LaLanne Fitness Centers, Inc. v. Jimlar, Inc.*, 884 F.Supp. 162, 165 (D.N.J. 1995).

As noted in *Jack LaLanne*, the leading case in New Jersey on piercing the corporate veil is *State of New Jersey, Dept. of Environ. Protection v. Ventron*, where the New Jersey Supreme Court held:

> Except in cases of fraud, injustice, or the like, courts will not pierce a corporate veil. The purpose of the doctrine of piercing the corporate veil is to prevent an independent corporation from being used to defeat the ends of justice, to perpetrate a fraud, to

accomplish a crime, or otherwise to evade the law.

Under certain circumstances, courts may pierce the corporate veil by finding that a subsidiary was 'a mere instrumentality of the parent corporation.' Application of this principle depends on a finding that the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent. Even in the presence of the corporate dominance, liability generally is imposed only when the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law.

Id. at 165 (quoting State of New Jersey, Dept. of Environ. Protection v. Ventron, 94 N.J. 473, 500–501, 468 A.2d 150 (1983) (citations omitted)).

■ In Jack LaLanne, the court was faced with determining the appropriate standard for determining whether a cause of action to pierce the corporate veil pled sufficient facts to survive a 12(b)(6) motion. The court noted that New Jersey allows a party to pierce the corporate veil when the corporation has been used to perpetrate a fraud or to prevent an injustice. The court concluded that when a cause of action seeks to pierce the corporate veil on the basis of fraud, it is subject to the pleading requirement of Rule 9(b). Id.; Allied Corp. v. Frola, 701 F.Supp. 1084, 1087 (D.N.J.1988) (claim based on substantial injustice rather than fraud governed by Rule 8(a)(2) rather than Rule 9(b)). Rule 9(b) provides, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b).

■ In the instant matter, defendants argue that Coyer has employed IDP, MedTech and AEI for fraudulent purposes and that the companies are his alter ego. Defendants' argument that these companies are the alter ego of Coyer makes no distinction in the court's analysis. In order to pierce the corporate veil of a corporation that is the alleged to be the alter ego of a party, one must still allege "the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or other-

wise to circumvent the law." State of New Jersey, Dept. of Environ. Protection v. Ventron, 94 N.J. 473, 500, 468 A.2d 150 (1983). Therefore, the court will evaluate defendants' claims pursuant to Rule 9(b). Fed.R.Civ.P. 9(b).

■ Count one involves Hemmer's allegations with regard to his employment contract with IDP. Count one discusses the allegation of breach of contract. Count one does not set forth any factual allegation to state a cause of action for piercing the corporate veil. Count two is more specific in alleging fraudulent conduct by Coyer in managing IDP. Count two alleges that Coyer caused three products, "the Jet Aire Professional 4 in 1 Hot Aire Styling System," the "Universal Fault Circuit Interrupter" and the "Immersion Detection Circuit Interrupter," to be transferred to other companies. Additionally, it is alleged IDP is now insolvent. No factual allegations are made against any of the remaining plaintiffs or third-party defendants. Accepting these allegations as true, the court concludes that Hemmer, if only barely, has satisfied the pleading requirement of Rule 9(b) and set forth a cause of action against Coyer and IDP sufficient to withstand a 12(b)(6) motion. Count one is dismissed, however, as to the remaining moving parties.

■ Count three is unlike count one. Count three discusses Hemmer's allegations of breach of contract by MedTech. Count three contains no allegations that Coyer fraudulently transferred assets. Count three merely concludes that Coyer treated MedTech as his alter ego. Mere conclusory statements are not enough. Additionally, count four, which discusses Coyer's alleged breach of fiduciary duty in operating MedTech, merely refers to Coyer's alleged "greed" in killing a potential merger. Moreover, Hemmer acknowledges that the only asset MedTech possessed was a license for an untested and unproven "herpes device." No factual allegations are made that any party, including Coyer, employed MedTech for fraudulent purposes. These factual allegations clearly fail to set forth with relative factual specificity a claim of fraud sufficient

to withstand a 12(b)(6) motion. Count three is therefore dismissed against the moving parties. *Jack LaLanne Fitness Centers, Inc. v. Jimlar, Inc.*, 884 F.Supp. 162, 165 (D.N.J. 1995).

■ Count six is like count one. Count six alleges that AEI breached an employment contract with Hemmer. As in count one, the allegations made against Coyer suggest fraud, conversion and embezzlement. The court concludes that these allegations sufficiently allege fraud by Coyer to survive a 12(b)(6) motion. No factual allegations of fraud, however, are made against Barus or Mrs. Coyer, with the exception of conclusory statements. The court is not persuaded by these conclusory allegations.

I note that an issue not raised by either party is whether New Jersey requires fraud to be committed by the corporation or for the benefit of the corporation in order to pierce the corporate veil. I point this out because it is apparent that the allegations of fraud regarding IDP and AEI are not related to the disputed contracts but involve allegations that Coyer defrauded the companies through self-dealing, fraud and embezzlement. This raises the issue of whether a party that contracts with a company may pierce the corporate veil on the basis that one of the company's directors defrauded the company. In light of the fact that neither party has briefed this issue, the court declines to make a determination on this issue. Plaintiffs' motion to dismiss count six against AEI and Coyer is denied. Motion granted as to Barus and Mrs. Coyer.

*Tortious Interference With A Business Opportunity*

Count five is a claim for tortious interference with a business opportunity against Coyer for interfering with Hemmer's prospective employment position. As discussed above, a merger was proposed between Med-Tech and a "blind pool" controlled by an investor. As a consequence of the merger, Hemmer was to be offered a position in the newly formed company at a salary of $100,000 per year. It is alleged, however, that Coyer's conduct in requesting $300,000 in compensation killed the merger. On the basis of these facts, Hemmer has brought a claim for tortious interference with a business opportunity.

Plaintiffs now move to dismiss count five on the basis that a party to an existing or prospective contractual relationship cannot be held directly liable for tortious interference with the opportunity, because, under the law, the actions of the parties to a contract are judged under contract law. Additionally, plaintiffs argue that Coyer's conduct is protected by the business judgment rule. In response, defendants argue that Coyer was not acting in his capacity as an officer or director of MedTech at the time he requested the compensation and, therefore, the rule has no application. Additionally, defendants argue the question of whether an employee can be held to have tortiously interfered with a business relationship of the company in the employee's individual capacity is an unresolved question of law. Both parties cite to *Printing Mart v. Sharp Electronics*, 116 N.J. 739, 761, 563 A.2d 31 (1989), in support of their respective positions.

In *Printing Mart*, the New Jersey Supreme Court was presented with the issue of whether individual employees can be held to have tortiously interfered with a business relationship of the company. *Id.* at 761, 563 A.2d 31. The court noted that resolution of this issue requires resolving a direct conflict of law between two accepted principles of agency law. On the one hand, the Court noted that one general principle of agency law states that when an employee commits a tort, the employee is not relieved of liability simply because he or she acted on behalf of the corporation. *Id.* at 762, 563 A.2d 31. The court noted that this principle has been held to allow an employee liable for tortiously interfering with a business relationship even though the employee was acting on behalf of the employer who would be a party to the contract. *Id.* On the other hand, the court noted it is a general principle of agency law that an employee cannot be held liable for the actions that would otherwise constitute a tort when the employee is exercising a privilege held by the employer. *Id.* The court noted that this principle has been held to hold privileged the conduct of an employee that would otherwise constitute tortious in-

terference with a business opportunity. *Id.* at 762–763, 563 A.2d 31.

A unanimous New Jersey Supreme Court, noting that the issue had not been thoroughly briefed, declined to rule on which principle of agency law would control and remanded for further discussion. Neither party directs the court's attention to any recent discussion of the issues by the court of New Jersey. Considering the New Jersey Supreme Court's reluctance to rule on this issue and the limited arguments made by the parties in this case, the court declines at this time to deny defendant the opportunity to address more fully the issue of why an employee should not have the opportunity of claiming privilege in tortiously interfering with business opportunities of his or her employer. *Shull v. Pilot Life Ins. Co.,* 313 F.2d 445, 447 (5th Cir.1963). Additionally, in light of the parties' factual dispute regarding the capacity in which Coyer was acting at the time of the alleged acts, it is inappropriate for this court to make a determination that the facts as alleged fail to state a cause of action; for it may be that after the facts are ascertained it will not be necessary for this court to resolve the legal question the parties assume. *Cf. Estelle v. Gamble,* 429 U.S. 97, 112 n. 7, 97 S.Ct. 285, 290 n. 7, 50 L.Ed.2d 251 (1976) (Stevens, J., dissenting) ("[t]his approach potentially avoids the necessity of ever deciding the constitutional issue since the facts as provided may remove any constitutional question.")

The court finds however, that no factual allegations are made against either AEI, Barus or Mrs. Coyer. Count five is dismissed against AEI, Barus and Mrs. Coyer.

*Shareholder Derivative Claims*

Counts two, four, seven and ten assert derivative shareholder claims. Count two, count four and count seven are derivative claims for breach of fiduciary duty. Count ten is a derivative and direct claim for RICO violations. Plaintiffs by motion now seek to dismiss these claims for failing to state a claim upon which relief can be granted. Plaintiffs raise several arguments.

Initially, plaintiffs argue that count two, count four, count seven and count ten of the counterclaim should be dismissed for failing to plead with particular facts why demand on the board was futile. *Aronson v. Lewis,* 473 A.2d 805, 809 (Del.1984). Additionally, plaintiffs argue that defendants have previously made a demand on the board of directors as to all of the allegations in count seven and, by doing so, have recognized the legitimacy of the board's actions. Plaintiffs seek to dismiss count seven as failing to plead sufficient facts to overcome the presumption that the board's actions are protected by the business judgment rule. Plaintiffs also argue that count seven is barred by the doctrines of res judicata and collateral estoppel. Additionally, plaintiffs argue that count ten should be dismissed by virtue of the applicable statute of limitations. Finally, plaintiffs argue that count ten is barred by the entire controversy doctrine. The courts' analysis is limited at this time to plaintiffs' first argument, as this issue is dispositive of counts two, four, seven and ten. Should the need arise in the future, those issues may be addressed.

For purposes of these issues, a brief discussion will be provided. "A shareholder derivative suit is a uniquely equitable remedy...." *Levine v. Smith,* 591 A.2d 194, 200 (Del.1991). "The derivative form of action permits an individual shareholder to bring suit to enforce a corporate cause of action against officers, directors, and third parties." *Kamen v. Kemper Financial Services, Inc.,* 500 U.S. 90, 95, 111 S.Ct. 1711, 1716, 114 L.Ed.2d 152 (1991) (citations omitted). "Devised as a suit in equity, the purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers." *Id.* (citations omitted).

To prevent litigant abuse, the courts have required the shareholder to establish that "the corporation itself had refused to proceed after suitable demand, unless excused by ordinary conditions." *Id.* at 96, 111 S.Ct. at 1716 (quoting *Ross v. Bernhard,* 396 U.S. 531, 534, 90 S.Ct. 733, 736, 24 L.Ed.2d 729 (1970)). This requirement of demand is codified in Rule 23.1 of the Federal Rules of Civil Procedure. The rule requires that a share-

holder bringing a derivative suit allege with particularity either his efforts to obtain the desired action from the board of directors, or the reasons he did not undertake such efforts. Fed.R.Civ.P. 23.1.

■■■■ The decision of the board of directors to bring a lawsuit or refrain from litigating a claim on behalf of the corporation is a decision concerning the management of the corporation and, thus, the responsibility of the board of directors. Thus, "when stockholders, after making demand and having their suit rejected, attack the board's decision as improper, the board's decision falls under the 'business judgment rule' and will be respected if the requirements of the rule are met...." *Abramowitz v. Posner*, 672 F.2d 1025, 1030 (2d Cir.1982). When a board refuses a demand, the only issues to be examined are whether the board acted in good faith and acted reasonably in conducting the investigation. A plaintiff in such cases must set forth sufficient facts to establish that the board's inaction was wrongful. Additionally, by making a demand the stockholder "tacitly acknowledges the absence of facts to support a finding of futility. Thus, when a demand is made, the question of whether demand was excused is moot." *Spiegel v. Buntrock*, 571 A.2d 767, 774–775 (Del.1990).

■■■■ When no demand is made on the board, the stockholder must plead particularized facts as to why demand would have been futile. Futility in this context does not mean that there is "no likelihood that a board will agree to the demand. Rather, demand is futile where a reasonable doubt exists that the board has the ability to exercise its managerial power, in relation to the decision to prosecute, within the strictures of its fiduciary obligations." *Heineman v. Datapoint Corporation*, 611 A.2d 950, 952 (Del.1992). If the board's "disability as to a particular transaction is attributable to self-interest or lack of independence, then presuit demand is not required." *Id.* The Delaware Supreme Court has established a two-part test for evaluating a claim of demand futility:

In determining the sufficiency of a complaint to withstand demand futility, the controlling legal standard is well estab-

lished. The trial court is confronted with two related but distinct questions: (1) whether threshold presumptions of director disinterest or independence are rebutted by well-pleaded facts; and, if not, (2) whether the complaint pleads particularized facts sufficient to create a reasonable doubt that the challenged transaction was the product of a valid exercise of judgment.

*Levine v. Smith*, 591 A.2d 194, 205 (Del. 1991).

■■■■ The Delaware Supreme Court has made clear, the two parts of the demand futility test are "two alternative hurdles, either of which a derivative shareholder complaint must overcome to successfully withstand a Rule 23.1 motion." *Id.* at 206. Under the first part of the test, "the court reviews the factual allegations of the complaint to determine whether they create a reasonable doubt as to the disinterestedness and independence of the directors at the time the complaint was filed." *Blasband v. Rales*, 971 F.2d 1034, 1048 (3d Cir.1992), *certif. dismissed*, 620 A.2d 858 (Del.1992). Directoral interest "exists whenever divided loyalties are present, or where the director stands to receive a personal financial benefit from the transaction not equally shared by the shareholders." *Id.* at 1048. Directoral independence "means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Aronson v. Lewis*, 473 A.2d 805, 812 (Del.1984). "It is not sufficient, however to simply allege domination and control of the directors by another person." *Emerald Partners v. Berlin*, 1993 WL 545409 at *3 (Del.Ch. Dec. 23, 1993). Nor is it sufficient to allege that a director a had a financial interest in the transaction. Rather, in order to establish demand futility under the first part of the test:

the stockholder must show, through the pleading of particularized facts, that a majority of the Board have a financial interest in the transaction or are so dominated by the proponent of the transaction that their 'discretion is sterilized.'

*Andreae v. Andreae*, 1992 WL 43924 at *4 (Del.Ch. March 5, 1992) (citations omitted) (holding "plaintiffs have created a reasonable doubt that the Board's decision to sell corporate assets at one-half of the original agreed premium, if true, could have been the product of a valid exercise of business judgment....") Additionally, control will not be presumed merely because one is a majority shareholder. As the Delaware Supreme Court explained:

it is not enough to charge that a director was nominated by or elected at the behest of those controlling the outcome of a corporate election. This is the usual way a person becomes a corporate director. It is the care, attention and sense of individual responsibility to the performance of one's duties, not the method of election, that generally touches upon independence.

*Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984).

■ Where the shareholder fails to plead sufficient facts to establish financial interest, entrenchment or lack of independence to excuse presuit demand, the shareholder must allege particularized facts sufficient to raise a reasonable doubt that the challenged transaction is protected by the business judgment rule. *Id.* Under Delaware law, this requires an analysis of the substance of the transaction, as well as a determination of whether the board made an informed decision. *Starrels v. First Nat'l Bank of Chicago*, 870 F.2d 1168, 1171 (7th Cir.1989). The business judgment rule is defined as "the presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was taken was in the best interests of the company." *Abrams v. Koether*, 766 F.Supp. 237, 250–251 (D.N.J. 1991) (citations omitted). As explained by Judge Lechner in *Abrams:*

The protection of the business judgment rule does not extend to an interested director. An interested director is a director who derives financial benefit from a transaction not devolving on shareholders of the

corporation generally or who has divided loyalties.

*Id.* at 251.

■ As these cases reveal, "[u]nder Delaware law, the rule that a shareholder must make a demand upon a corporations's directors before initiating a derivative suit, unless such demand would be futile, is more than mere pleading; *it is a substantive right.*" *Starrels v. First Nat'l Bank of Chicago*, 870 F.2d 1168, 1171 (7th Cir.1989) (emphasis added). As stated by one court:

[N]otice pleading is not enough. Generalities, artistically ambiguous, all-encompassing conclusory allegations are not enough. What is required are pleadings that are specific and, if conclusory, supported by sufficient factual allegations that corroborate the conclusion and support the proposition that demand is futile.

*Richardson v. Graves*, 1983 WL 21109, at *2 (Del.Ch. Mar. 7, 1983).

■ In the case before us, count two asserts a derivative shareholder claim involving IDP. According to the counterclaim, Coyer acted out of self-interest and breached his duty of loyalty to the shareholders of IDP by allowing his company AD (Hong Kong) to increase the price of merchandise sold to IDP surreptitiously. Additionally, it is alleged Coyer has transferred company assets to other Coyer enterprises, including transferring the Jet Aire product to AEI. These allegations are not enough to overcome the presumption of director disinterest. No factual allegations are made against anyone in his capacity as a director, with the exception of Coyer. Additionally, there are no factual allegations that would demonstrate, through personal or other financial relationships, that any directors are beholden to Coyer. *Id.* In fact, defendants fail to set forth the number of directors who serve on the board, who they are and their relationship to Coyer. With the exception of Coyer and Hemmer, no directors are named. The court finds defendants' conclusory statement that Coyer controlled the board of directors, without more, insufficient to create a reasonable doubt as to the independence of a majority of the board. As discussed above, to establish demand futility under the first part of the test, "the

stockholder must show, through the pleading of particularized facts, that a majority of the Board have a financial interest in the transaction or are so dominated by the proponent of the transaction that their 'discretion is sterilized.'" *Andreae v. Andreae,* 1992 WL 43924 at *4 (Del.Ch. March 5, 1992) (citations omitted).

Having failed to satisfy the first element of the demand futility test, in order to withstand a motion to dismiss, defendants are required to plead particularized facts that would create a reasonable doubt that the challenged transactions were the product of a valid exercise of business judgment. The court concludes that defendants have not met this burden. Simply put, the allegations accuse AD (Hong Kong) and Coyer of fraudulently earning a profit at the expense of IDP. There is no allegation of board misconduct. There is no allegation that the board of directors approved the transaction with knowledge that IDP was not getting the benefit of the bargain. In fact, there is no allegation that the board of directors took any action. Only Coyer is said to have stood on both sides of the transaction. For this reason, and because it is alleged Coyer concealed the price increase from the board, the defendants have shown no basis to doubt that the board's action, if any, was anything but the product of a valid exercise of business judgment. *Yaw v. Ramco Holding Corp.,* 1994 WL 89019, at *10 (Del.Ch. March 2, 1994) ("[t]he complaint also falls short of alleging that the directors approved the disbursement of funds for redecoration with knowledge that a substantial portion of those funds would be converted to Lee's personal use"); *Vernars v. Young,* 539 F.2d 966, 968 (3d Cir.1976) (absent allegation that majority of board participated in fraudulent misappropriation of corporate funds demand would not be excused). Defendant has therefore failed to establish that demand on the board would be futile. Fed.R.Civ.P. 23.1. Count two is dismissed against all moving parties.

■ Count four of defendants' counterclaim and third-party complaint is similar to the allegations contained in count two. Hemmer alleges Coyer breached his fiduciary duty to the shareholders of MedTech by acting out of self-interest and preventing a merger of MedTech from occurring. According to Hemmer, a merger had been negotiated with an investor in early 1993 to merge MedTech with a "blind pool." According to Hemmer, after the deal was negotiated, Coyer requested that he be paid $300,000 for accrued back salary and other benefits. Hemmer claims that no demand was made on the board because Coyer controlled a majority of the stock and controlled the board of directors.

As in count two, the counterclaim and third-party complaint does not single out, with the exception of Coyer and Hemmer, current or past directors who served on the board. Additionally, there is no allegation that a majority of the board did anything improper. Without more factual allegations, count four fails to establish that a majority of the board acted out of financial interest or were so dominated by Coyer as to rebut the presumption of director disinterest. Additionally, the court does not find that the factual allegations rebut the proposition that board actions were an otherwise valid exercise of business judgment. The court notes that the pleadings do not dispute the validity of the "accrued" back salary and other compensation; only that the request to collect the compensation "killed" the merger. Additionally, there are no allegations the board took any action. Absent factual allegations that Coyer diverted funds to which he was otherwise not entitled with the knowing approval of the board of directors, demand futility will not be assumed. Count four is dismissed against the moving parties.

■ Count seven of defendants' counterclaim and third-party complaint raises numerous claims in which it is alleged Coyer breached his fiduciary duty to the shareholders of AEI. It is alleged that Coyer caused AD (Hong Kong) to overcharge AEI 1.2 million dollars for merchandise, diverted $600,000 in sales of merchandise from AEI to AD (Hong Kong), *attempted* to merge AEI and dilute shareholder value, converted and transferred AEI assets, received excessive compensation and committed acts of nepotism and otherwise misappropriated company assets.

All of these allegations, if true, paint a troubling picture of the operation of AEI. According to the counterclaim, Coyer is president, chief executive officer and chairman of the board of directors of AEI. Many of these allegations accuse Coyer of misconduct and breach of his duty of loyalty to the company in his position as president and chief executive officer. Additionally, Coyer is accused of breaching his duty of loyalty to AEI as a shareholder when he acted in the best interest of AD (Hong Kong). The allegations do not, however, challenge any activity of the board of directors or otherwise impugn the integrity of the otherwise nameless directors. Consistent with counts two and four, Hemmer alleges that no demand was made on the board because the board was otherwise dominated or controlled by Coyer. No factual allegations are provided to support these claims. The only reference to any director acting in cooperation with Coyer is contained in the allegation that Coyer and Barus acted together to convert and transfer corporate assets. Accepting this allegation as true, absent specific underlying allegations which substantiate the conclusion, defendants have not created a reasonable doubt that a majority of the board of directors, in response to a demand, would not comport their conduct to the law and in proper protection of the interests of the corporation. *Citron On Behalf Of United Technologies v. Daniell,* 796 F.Supp. 649, 652 (D.Conn.1992). Count seven is dismissed against the moving parties.

■ Finally, count ten asserts a shareholder derivative claim, as well as a direct cause of action for New Jersey and Federal "RICO" violations. Defendants' derivative claim alleges that defendants have been injured by the fraudulent activities "insofar as their interest in the stock of IDP, MedTech and AEI have been reduced." Count ten, ¶ 163. The court finds that this asserts a claim shared by all shareholders based on an injury to the corporations. The defendants lack standing to raise this claim, and it is therefore dismissed against the moving parties. *In re Sunrise Securities Litigation,* 916 F.2d 874, 880 (3d Cir.1990) ("[f]ederal courts that have considered the question in shareholder suits all have held that shareholders lack standing to assert RICO claims where the injuries are not direct or distinct from any injury sustained by the corporation and the shareholders generally.")

■ Additionally, defendants allege a direct injury in that Hemmer has been coerced into working for less salary than he was otherwise entitled to. The counterclaim alleges that Hemmer has been directly injured *"by false and misleading statements made by the plaintiffs and third party defendants to induce Hemmer to work for reduced salary, or for no salary in reliance on their representations...."* Count ten, ¶ 164 (emphasis added). Accepting defendants' allegations as true, the court finds defendants have set forth a direct claim for injury and therefore have standing to assert a cause of action. *Small v. Goldman,* 637 F.Supp. 1030, 1033 (D.N.J.1986).

■ The court must dismiss defendants' claim for direct injury. To assert a legally sufficient RICO claim, a litigant must allege a "pattern of racketeering activity." 18 U.S.C.A. § 1961 (West 1984); N.J.Stat.Ann. § 2C:41–2 (West 1982). This requires, at a minimum, at least two acts of racketeering activity. In the instant case it is alleged that plaintiffs made "false and deliberate misleading statements," inducing Hemmer to work without compensation. The pleadings do not implicate mail fraud or wire fraud. Thus, defendants' claim fails to set forth a RICO claim. 18 U.S.C.A. § 1961 (West 1984); N.J.Stat.Ann. § 2C:41–1 (West 1982). Such acts of common-law fraud which do not implicate the mails or the wires do not constitute "racketeering activity" under either the federal or state statute. *Fleet Credit Corp. v. Sion,* 893 F.2d 441, 445 (1st Cir.1990). Count ten is dismissed against all moving parties.

*Violation of Federal and New Jersey Securities Laws*

■ Count eight asserts claims for violations of federal and New Jersey securities law. The count alleges that defendants were induced to invest in securities that were otherwise fraudulently misrepresented and were otherwise unregistered in violation of the

law. No specific factual allegations are provided. Defendants seek rescission of the sale of the stock and return of their invested funds. Plaintiffs have moved to dismiss the claims on the basis that the alleged acts are barred by the applicable statute of limitations. N.J.Stat.Ann. § 49:3–71 (West 1970). Alternatively, plaintiffs argue that the claims should be dismissed for failing to plead fraud with particularity. Fed.R.Civ.P. 9(b). Defendants oppose the motion on the basis that the statute of limitations for fraud has not run. Additionally, defendants argue that the counterclaim, taken in its entirety, sets forth with requisite factual specificity an allegation of fraud.

Typically a plaintiffs' complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). However, the first sentence of Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened level of pleading for fraud claims. Rule 9(b) requires, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b).

In the instant case, a review of the allegations contained in count eight leads to the inescapable conclusion that count eight must be dismissed for failing to plead fraud with requisite particularity. A review of the allegations discloses that not a single fraudulent statement, writing, prospectus, financial statement, etc., is described. Nor is a single example provided in which any of the parties made fraudulent representations of any kind. Count eight is therefore dismissed against the moving parties.

*Economic Duress*

Count nine of the counterclaim asserts a claim for the tort of "economic duress" against Coyer. Count nine, as discussed above, alleges Coyer was aware at all times that Hemmer was heavily in debt and dependent upon a salary. Count nine, ¶ 144. It is further alleged that Coyer repeatedly used Hemmer's circumstances "to compel Hemmer to work without payment of his salary or at partial payment of salary."

Plaintiffs move to dismiss count nine on the basis that economic distress is not a recognized tort in New Jersey. Alternatively, plaintiffs argue defendants have not alleged sufficient facts to withstand a 12(b)(6) motion. Plaintiff cites *National Amusements v. Turnpike Auth.*, 261 N.J.Super. 468, 479, 619 A.2d 262 (L.Div.1992), *aff'd*, 275 N.J.Super. 134, 645 A.2d 1194 (App.Div. 1994), *certif. den.*, 138 N.J. 269, 649 A.2d 1288 (1994), as supporting their position that New Jersey does not recognize a cause of action for economic duress. In *National Amusements,* the New Jersey Superior Court, Law Division, held:

> Although New Jersey courts recognize economic duress as a defense or a basis for contract recision, the courts do not yet recognize economic duress as an affirmative tort action in New Jersey. Even if this court were to expand current New Jersey tort law to include an affirmative cause of action for economic duress, plaintiff has not pled facts sufficient to support a finding of economic duress.

> 'Merely taking advantage of another's financial difficulty' or 'driving a hard bargain' is not duress. Duress requires an 'assent by one party to an improper or wrongful demand by another under circumstances in which the former has little choice but to accede to the demand.'

Id. (citations omitted).

Defendants oppose dismissal of the motion on the basis that New Jersey has not definitively ruled whether or not economic duress is a tort. *Glenfed Financial v. Penick Corp.*, 276 N.J.Super. 163, 173, 647 A.2d 852 (App. Div.1994), *certif. den.*, 139 N.J. 442, 655 A.2d 444 (1995) (declining to reach issue of whether economic duress is an actionable tort when party presented insufficient facts to support claim). Defendant relies on a sentence in *Glenfed Financial* where the court states, "[h]owever, it is unnecessary for us to address [whether economic duress is a tort] because Penick failed in any event to present evidence which would support a finding of economic duress." Id. at 173.

Both parties suggest that these opinions determine the outcome of this motion. The court disagrees. As a court sitting in diversity involving a question of New Jersey law,

the court is bound to follow New Jersey law. *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 663 (3d Cir.1980), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). This requires the court to complete the task of determining what the relevant New Jersey law is. The problem that arises in cases such as this is ascertaining what the law is when the highest court of the state of New Jersey has not ruled on the issue. An ascertainment of pertinent New Jersey law requires an examination of all relevant sources of state law in order to isolate those factors that inform the court's decision. In the instant matter I am unpersuaded that either *National Amusements, supra*, or *Glenfed Financial, supra*, reached the issue raised by the parties. Although *National Amusements* did state that the courts of New Jersey do not yet recognize economic duress, the court decided the opinion on the insufficiency of plaintiffs pleadings. *National Amusements*, 261 N.J.Super. at 479, 619 A.2d 262. Additionally, neither party provided the court with any other relevant material to aid the court in resolving the issue. The court need not reach this issue, however, and the court declines to do so. Cf. *Estelle v. Gamble*, 429 U.S. 97, 112 n. 7, 97 S.Ct. 285, 290 n. 7, 50 L.Ed.2d 251 (1976) (Stevens, J., dissenting).

The court finds that defendant has not pled sufficient facts to support a finding of economic duress to withstand a 12(b)(6) motion. The only allegation defendant makes is that "Coyer repeatedly used Hemmer's circumstances of economic distress to compel Hemmer to work without payment of his salary, or at partial payment of salary." In their opposition brief, defendants argue that Hemmer was "induced to work for four years for no salary or partial salary on constant promises of ultimate repayment." Def. Opposition Br. at 26. No specific factual allegations are made as to circumstances or to statements Coyer made in either the pleadings or the brief. Absent more specific factual allegations, the court declines to resolve the question of whether New Jersey would recognize the tort of "economic duress." Count nine is dismissed against all the moving parties.

*Conclusion*

For the above stated reasons the motion of plaintiffs, William F. Coyer, Sr., Daniel V. Barus and Advanced Electronics, Inc., and third-party defendant Mrs. William F. Coyer, Sr., is granted as to counts two, three, four, seven, eight, nine and ten. The motion is also granted as to Mrs. William F. Coyer, Sr., and Daniel V. Barus as to counts one, five and six. The motion is also granted as to America Direct, Inc. as to counts one and five.

An order accompanies this opinion.

## ORDER

THIS MATTER having come before the court on motion of plaintiffs, William F. Coyer, Sr., Daniel V. Barus and America Direct, Inc., and third-party defendant, Mrs. William F. Coyer, Sr., to dismiss defendants' counterclaim and third-party complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and the court having considered the written submissions and oral argument of counsel; and for good cause shown,

IT IS on this 20th day of September, 1995,

ORDERED that plaintiffs' and third-party defendant's motion is granted in part and denied in part, as follows:

1. Counts 2, 3, 4, 7, 8, 9 and 10 are hereby dismissed;

2. Counts 1, 5 and 6 are hereby dismissed as to Mrs. William F. Coyer, Sr. and Daniel V. Barus; and

3. Counts 1 and 5 are dismissed as to America Direct, Inc.